**In re CONE CONSTRUCTORS, INC., d/b/a Cone Commercial, Debtor.**

No. 00–10589–8G7.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 22, 2003.

Don M. Stichter, Stichter, Riedel, Blain & Prosser, Tampa, FL, for Debtor.

Allan C. Watkins, Watkins Law Firm, P.A., Tampa, FL, for the Chapter 7 Trustee, Carolyn R. Chaney.

Shirley C. Arcuri, Shirley C. Arcuri, P.A., Tampa, FL, for Creditor, Joe G. Tedder, Tax Collector of Polk County.

## ORDER ON MOTION FOR IMMEDIATE PAYMENT OF SECURED TAX CLAIM

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the Motion for Immediate Payment of Secured Tax Claim filed by Joe G. Tedder, Polk County Tax Collector.

The parties agree that the claim of Joe G. Tedder, Tax Collector of Polk County (the Tax Collector) is an oversecured claim. (Transcript of April 2, 2003, hearing, pp. 13, 16). Further, the Trustee consents to the prompt payment of the claim prior to the final distribution of funds from the chapter 7 estate. (Transcript, p. 18).

The two issues in this case, however, are (1) whether the Tax Collector should receive payment of interest on his secured claim at the statutory rate of 18 per cent per annum, and (2) whether the Tax Collector should receive reimbursement of the attorney's fees and costs that he incurred in connection his recovery of the delinquent taxes.

The Trustee contends that the Tax Collector should receive interest only at the judgment rate, instead of the statutory rate, since the statutory rate is actually a disguised penalty that should not be allowed in a liquidating case. The Trustee

further contends that the Tax Collector is not entitled to reimbursement of his attorney's fees and costs, since the parties did not enter into any agreement providing for such fees and costs.

## Background

The Debtor, Cone Constructors, Inc., was the general contractor on various construction/transportation projects.

The Debtor filed Tangible Personal Property Tax Returns in Polk County, Florida, for the 1997, 1998, and 1999 tax years.

The Debtor filed a petition under chapter 11 of the Bankruptcy Code on July 7, 2000.

On July 19, 2000, the Polk County Tax Collector filed a secured Proof of Claim in the Debtor's bankruptcy case in the amount of "$249,656.79 plus interest at 18%." (Claim Number 1). The property listed on the Proof of Claim as collateral for the debt consists of "tangible personal property," and the estimated value of the collateral, according to the Proof of Claim, was $929,820.00.

The bankruptcy case was converted to a case under chapter 7 on December 5, 2000, and Carolyn R. Chaney was appointed as the Chapter 7 Trustee.

On November 26, 2002, the Polk County Tax Collector filed the Motion for Immediate Payment of Secured Tax Claim that is currently under consideration.

The Tax Collector contends that the Chapter 7 Trustee sold three cranes to Barry Green and Associates for the sum of $720,000.00 in connection with her administration of the estate, and that the cranes were subject to the Tax Collector's tax lien. (Doc. 186, Order Granting Trustee's Emergency Motion for Authority to Reduce Sale Price of Cranes, January 22, 2001). The Tax Collector further contends that the Trustee entered into a compro-mise with Doyle Corporation, and that the equipment that was the subject of the compromise was also subject to the Tax Collector's tax lien. (Doc. 462, Order Granting Trustee's Motion to Compromise Controversy with Doyle Corporation, December 17, 2002). The estate received the sum of $300,000.00 in conjunction with the compromise.

According to the Tax Collector, therefore, the Trustee received the total sum of $1,020,000.00 from the liquidation of the Tax Collector's collateral. Further, according to the Tax Collector's calculations, the aggregate amount of his Claim as of April 30, 2003, equals $344,525.78. (Transcript, p. 13).

Consequently, the Tax Collector asserts that his claim is oversecured, and that the Court should direct the Trustee to pay the claim immediately. The Tax Collector contends that he is entitled to receive the proceeds of all of the personal property and equipment that constituted security for his lien, to the extent of his allowed claim, plus interest at the statutory rate of 18 per cent per annum. Additionally, the Tax Collector asserts that he is entitled to recover his reasonable attorney's fees and court costs in accordance with Section 197.332 of the Florida Statutes.

In response, the Trustee contends that interest on the secured claim should accrue at the judgment rate (which the Trustee states is 9 percent), rather than the statutory rate of 18 percent, since the statutory rate is actually a coercive measure or disguised penalty and not a provision designed to reimburse the Tax Collector for lost financial opportunities. The Trustee further contends that the Court should not award attorney's fees and costs to the Tax Collector absent an agreement between the parties providing for such an allowance.

## Discussion

Section 506(b) of the Bankruptcy Code provides:

### 11 USC § 506. Determination of secured status

. . . . .

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

The parties agree that the Tax Collector's claim is an oversecured claim that should be promptly paid. (Transcript, pp. 13, 16, 18). The only issue is the specific amount of the distribution that the Tax Collector should receive from the chapter 7 estate.

### I. Applicable rate of interest

■ The Tax Collector contends that he is entitled to payment of the principal amount of his secured claim, plus interest at the rate of 18 percent per annum as provided by § 197.172 of the Florida Statutes. In response, the Trustee asserts that the statutory interest rate is inappropriate in this case, because the rate is punitive in nature. Instead, the Trustee asserts that interest should be computed on the secured claim at the judgment rate.

Section 197.122 of the Florida Statutes provides in part:

### CHAPTER 197. TAX COLLECTIONS, SALES, AND LIENS

### 197.122 Lien of taxes; dates; application

(1) All taxes imposed pursuant to the State Constitution and laws of this state shall be a first lien, superior to all other liens, on any property against which the taxes have been assessed and shall continue in full force from January 1 of the year the taxes were levied until discharged by payment or until barred under chapter 95.

Fla. Stat. § 197.122.

Section 197.172 of the Florida Statutes provides in part:

### 197.172. Interest rate; calculation and minimum

. . . . .

(3) Personal property taxes shall bear interest at the rate of 18 percent per year from the date of delinquency until paid or barred under chapter 95.

Fla. Stat. § 197.172.

The Court concludes that the Tax Collector is entitled to interest on his secured claim at the statutory rate of 18 percent per annum.

The Trustee relies on *In re Mulberry Phosphates, Inc.*, 283 B.R. 347 (Bankr. M.D.Fla.2002) to support her contention that the Tax Collector is entitled to interest only at the judgment rate, and not at the rate set forth in § 197.172 of the Florida Statutes. In *Mulberry Phosphates*, the Court concluded:

[W]hile it is true that the Florida Statute utilizes the word "interest," to describe the charge on delinquent taxes, it is in fact in the nature of penalty and not to compensate the county for loss of use of the funds and loss of utilization of funds should be determined by the current applicable government rate.

*In re Mulberry Phosphates*, 283 B.R. at 349. See also *In re Koger Properties, Inc.*, 172 B.R. 351, 353 (Bankr.M.D.Fla. 1994)(The 18% interest rate in the statute "is in fact in the nature of a penalty.").

In other cases, however, Courts have concluded that the interest rate contained in § 197.172 is not a penalty. In *In re Liuzzo*, 204 B.R. 235 (Bankr.N.D.Fla.1996)(Killian, J.), for example, the Court addressed the rate of interest established for delinquent real estate taxes (18%) under § 197.172(1) of the Florida Statutes. In that case, the Court found:

> I decline to adopt the *Koger* analysis for the following reasons. First, ... this is not a typical real estate loan because title insurance, hazard insurance, and other lender protections, which are included in standard mortgage agreements, are lacking in this case.... Further, the statutory rate is not high relative to consumer loan transactions with similar risk of non-payment, ... Finally, the Debtor has not presented any evidence, in the form of state case law, legislative history or otherwise, which supports his proposition that the statutory rate of interest provided in § 197.172 is in the nature of a penalty.

*In re Liuzzo*, 204 B.R. at 240.

In an earlier decision, the Court in *In re R & W Enterprises*, 181 B.R. 624 (Bankr.N.D.Fla.1994)(Cohen, J.) dealt directly with the type of personal property taxes that are at issue in the case under consideration. In *R & W Enterprises*, the Court stated:

> The instant case involves personal property taxes however.... While there was no evidence presented on the question, common sense, and the credit card in this judge's pocket, demonstrates that 18% interest on personal loans is not, although some may wish differently, a legally unreasonable rate and consequently a penalty.... [F]or purposes of calculating pre-distribution interest due the County on a claim for personal property ad valorem taxes, this Court finds

that section 197.172(3) Fla.Stat. is not a penalty.

*In re R & W Enterprises*, 181 B.R. at 651 n. 8. See also *In re Haskell*, 252 B.R. 236, 242 n. 7 (Bankr.M.D.Fla.2000)(Funk, J.)("Although not raised, the Court recognizes the separate issue of whether statutory rates of interest constitute true interest or provide for a penalty.... The Court favors the reasoning in *Liuzzo* that the statutory rate [contained in § 197.172] does not constitute a penalty.")

Further, the decisions in *Liuzzo*, *R & W Enterprises*, and *Haskell* are consistent with decisions in other jurisdictions. In *In re Marfin Ready Mix Corp.*, 220 B.R. 148 (Bankr.E.D.N.Y.1998), for example, the Court determined that the rate of interest contained in a statute was not a disguised penalty:

> First, while the Court is certainly not bound by the statutory label, the Court considers the label as some evidence of the character of the charge....
>
> . . . . .
>
> Lastly, the Debtor has not presented any evidence whatsoever, in the form of case law or legislative history, to support its claim that a portion of the interest rate constitutes a penalty.

*In re Marfin Ready Mix Corp.*, 220 B.R. at 151–52. See also *In re P.G. Realty Company*, 220 B.R. 773, 781 (Bankr. E.D.N.Y.1998)("The Court agrees with the City that simply because its rate is high does not make a portion of the rate a penalty. There are good reasons for taxing authorities to exact an interest rate when taxes go unpaid higher than that exacted by consensual mortgages when lending money."); *Town of Monroe v. 837 Main Street Corporation*, 712 A.2d 996, 1000 (Sup.Ct.Conn.1997)("[T]he Court concludes that the interest imposed on delinquent taxes is compensatory, and not

punitive in nature. The eighteen percent interest per annum was imposed primarily to ensure that municipalities receive fair compensation for delayed payment of taxes in light of fluctuating market rates, inflation, and collection costs."); and *In re Chang*, 274 B.R. 295, 304 (Bankr.D.Mass. 2002)("[T]here is no justification for reducing the rate of tax to be paid to Pinellas County during the postpetition, preconfirmation period.").

Based on these authorities, the Court concludes that the Tax Collector is entitled to interest on his secured claim at the statutory rate of 18 percent per annum. Such a rate is not wholly disproportionate or excessive in relation to market risks and conditions, and no evidence has been presented to indicate that the provision was intended to penalize delinquent taxpayers, rather than compensate the taxing authority for delayed payment of the taxes.

**II. Attorney's fees and costs**

■ The Tax Collector contends that he is entitled to recover the attorney's fees and costs that he incurred in collecting the delinquent taxes due from the Debtor, in addition to the principal amount of the claim and statutory interest. In response, the Trustee asserts that such fees and costs are not recoverable in this case, since the parties never entered into an agreement providing for such an allowance.

Section 197.332 of the Florida Statutes provides:

**197.332. Duties of tax collectors**

The tax collector has the authority and obligation to collect all taxes as shown on the tax roll by the date of delinquency or to collect delinquent taxes, interest, and costs, by sale of tax certificates on real property and by seizure and sale of personal property. *The tax collector shall be allowed to collect reasonable attorney's fees and court costs in actions on proceedings to recover delinquent taxes, interest, and costs.*

Fla. Stat. § 197.332(Emphasis supplied).

Despite the allowance of attorney's fees and costs in § 197.332, however, the Court concludes that the Tax Collector is not entitled to an award of such fees and costs in this bankruptcy case.

Section 506(b) of the Bankruptcy Code provides:

**11 USC § 506. Determination of secured status**

. . . . .

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, *and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.*

11 U.S.C. § 506(b)(Emphasis supplied). The United States Supreme Court has interpreted Section 506(b) as follows:

The natural reading of the phrase entitles the holder of an oversecured claim to postpetition interest and, in addition, gives one having a secured claim created pursuant to an agreement the right to reasonable fees, costs, and charges provided for in that agreement. Recovery of postpetition interest is unqualified. Recovery of fees, costs, and charges, however is allowed only if they are reasonable *and provided for in the agreement under which the claim arose. Therefore, in the absence of an agreement, postpetition interest is the only added recovery available.*

*United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)(Emphasis supplied).

*Ron Pair* involved a federal tax claim. The rule set forth in *Ron Pair*, however, was subsequently applied to local taxing authorities.

> Because we are persuaded that the 1978 Code follows pre-Code law in its general denial of postpetition additions to tax claims regardless of their origin, we find that *Ron Pair* applies to this state tax claim.

> ... Since the Supreme Court has ruled decisively on the meaning of § 506(b), it is now clear to us that the bankruptcy court was correct in allowing the County to recover postpetition interest but concluding that *"Ron Pair requires disallowance of Williamson County's claim for post-petition fees and costs because Williamson County's claim arose by operation of law and not by agreement."* *Brentwood Outpatient,* 134 B.R. at 270.

*In re Brentwood Outpatient, Ltd.,* 43 F.3d 256, 262 (6th Cir.1994)(Emphasis supplied). Further, the Sixth Circuit's interpretation of § 506(b) was recently adopted in *In re Chang,* 274 B.R. 295 (Bankr.D.Mass.2002), a case which dealt with the Florida statute under consideration. In *Chang,* the Court stated:

> The plain language of section 506(b) is clear. While a holder of oversecured claim is entitled to interest without regard to whether the claim arose by agreement or operation of law, only a holder of an oversecured claim that arose under an agreement that provides for fees, costs, and other charges, is entitled to the same. *That Florida law may provide for the collection of costs, including attorney's fees, as part of the collection of delinquent taxes is irrelevant in a bankruptcy. A state statute is not an agreement contemplated by the language of Section 506(b).*

*In re Chang,* 274 B.R. at 305(Emphasis supplied).

Based on these authorities, the Court concludes that the Tax Collector is not entitled to recover attorney's fees and costs, because his secured claim does not arise from an agreement that provides for the allowance of such an additional award. Consequently, the allowance of attorney's fees and costs is precluded by § 506(b) of the Bankruptcy Code.

### III. Law of the case

 Finally, it should be noted that the Court's disallowance of the Tax Collector's attorney's fees and costs is not prohibited by the "law of the case" doctrine.

On July 16, 2001, the Tax Collector of *Pasco* County filed a Motion for Immediate Payment of Tax Claims from Sale Proceeds. (Doc. 311). On September 6, 2001, the Court entered an Order permitting the Pasco County Tax Collector to file an affidavit setting forth the amount of the taxes due for the relevant tax years, "and the attorney's fees and costs incurred." (Doc. 337). The Order further directed the Trustee to pay the taxes and other amounts, unless the Trustee or another party in interest filed an objection to any of the amounts claimed. The Pasco County Tax Collector filed an Affidavit of Tax Collector and an Affidavit of Attorney's Fees on September 19, 2001. (Doc. 341). Neither the Trustee nor any party in interest filed an objection to any of the amounts set forth in the Affidavits, and no further orders were entered on the Motion.

The Order on Pasco County's Motion did not establish the "law of the case" for purposes of determining the Polk County Tax Collector's request for attorney's fees and costs that is currently under consideration. The Order does not contain any findings regarding the propriety of allow-

ing statutory fees and costs under § 506(b), and the issue was not presented to the Court for decision.

"... [L]aw of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983) (Citation omitted). However, the law of the case "directs a court's discretion, it does not limit the tribunal's power." *Id.*

"The law of the case doctrine has several branches; one deals with decisions of a lower court that have been ruled on appeal, and another deals with decisions that have not been ruled on on appeal." *United States v. Uccio,* 940 F.2d 753, 757 (2d Cir.1991). "When an appellate court has once decided an issue, the trial court, at a later stage in the litigation, is under a duty to follow the appellate court's ruling on that issue." *Id.* (Citations omitted). See also *Venn v. St. Paul Fire and Marine Insurance Company,* 99 F.3d 1058 (11th Cir.1996). When a trial court has ruled on an issue, but the appellate court has not made a determination of that issue, the trial court's earlier decision should direct, but not limit, the court's determination of the issue at a subsequent stage. *Uccio,* 940 F.2d at 757, citing *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). Considering whether to apply the law of the case doctrine, trial courts consider the prejudice to the party seeking the benefit of the doctrine, and whether there is a cogent or compelling reason to deviate, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Uccio,* 940

F.2d at 757. See also *Venn,* 99 F.3d at 1062.

> When a court applies the law of the case doctrine to its own prior decisions (or those of a coordinate or equal court), the traditional formulations of the doctrine must be conceived as rules of thumb and not as straightjackets on the informed discretion and sound practical judgment of the judge. (Citation omitted).... Common sense, not a rigid set of rules, is the touchstone to sound application of the law of the case doctrine when a higher court's mandate is not at stake.

18 *Moore's Federal Practice,* § 134.21[1] (Matthew Bender 3d ed.)

It is clear that the Order on Pasco County's Motion did not establish the "law of the case" for purposes of the Polk County Tax Collector's request that his attorney's fees be paid. The earlier Order directed the Pasco County Tax Collector to file an itemization of amounts requested, and provided that the Trustee or any party in interest could object; however, no objections were filed, and the issue of the allowance of attorney's fees was not presented to the Court for determination.

### Conclusion

Claim Number 1 filed by the Polk County Tax Collector is an oversecured claim. The Court finds that the Tax Collector should be paid the principal amount of its claim for the 1997, 1998, and 1999 tax years, plus interest calculated at the rate of 18 percent per annum as provided by § 197.172(3) of the Florida Statutes. The Court cannot conclude that the interest rate provided by the statute is actually in the nature of a penalty.

The Court further finds, however, that the Tax Collector is not entitled to recover the attorney's fees and costs that he incurred in connection with his activities to collect the delinquent taxes. The Tax Col-

lector's claim did not arise from an agreement which provides for the recovery of such fees and costs, so that the additional award is precluded by § 506(b) of the Bankruptcy Code.

Accordingly:

**IT IS ORDERED** that:

1. The Motion for Immediate Payment of Secured Tax Claim filed by Joe G. Tedder, Polk County Tax Collector, is granted as set forth in this Order.

2. Carolyn R. Chaney, as Chapter 7 Trustee, is directed to pay Claim Number 1 of Joe G. Tedder, Polk County Tax Collector, within thirty (30) days of the date of this Order. The amount of the distribution shall equal the principal amount of the tangible personal property taxes for the 1997, 1998, and 1999 tax years, plus interest calculated at the rate of 18 percent per annum as of the date of distribution.